Seney, J.
On the 19th day of December, A. D. 1890, Jonas Concklin presented his petition (duly sworn to), to me^as one of the judges' of the Circuit Court of Ohio, averring the following facts:
“ That he is unlawfully in custody of and restrained of his liberty by Patrick Kelley, Sheriff of Marion county, Ohio, at Marion, in said state.”
“ The pretended cause of so restraining him of his liberty is :
“That on the 29th day of October, A. D. 1890, in the Probate Court of Marion county, Ohio, the Prospect Bank instituted proceedings in aid of execution against the said Jonas Concklin, in which prceeding the said Jonas Concklin answered that he was the owner of ninety-three thousand three hundred shares of the capital stock of the Cora Bruce Bankock Mining Company, a corporation of the state of Colorado ; that said shares of mining stock were within his control; that the same were notin his possession, nor ever had been, and were, not within the state of Ohio, and never had been to his knowl *79 edge; that said shares of stock were within, the state of Colorado, and never had been transferred in his name on the books of the said mining company.”
Thereupon the said probate court, on motion of said bank, appointed the said sheriff, Patrick Kelley, receiver of all the property of the said Jonas Concklin, and ordered the said Concklin to deliver said mining stock to said receiver.
The said Jonas Concklin having failed and refused to deliver said mining stock to said receiver, the said court, on the 16th day of December, 1890, against the protest and objection of the said Jonas QonJdin, made the following order of commitment :
“ This day this cause came on to be heard upon the charge preferred against Jonas Concklin by plaintiff, charging him with being guilty of contempt in having failed and refused to deliver the property described in the order of the court, heretofore in these proceeding made to the sheriff as receiver, according to the terms of said order; and the court having heard the evidence and argument of counsel, and being fully advised in the premises, find that said Jonas Concklin is guilty of contempt as charged. And it appearing to the court that it is yet in the power of said Jonas Coneklin to comply with the order of this court, for the disobeying of which he is guilty of contempt, it is thereupon adjudged by the court that the said Jonas Concklin be imprisoned in the county jail of this county until he comply with said order, and that a warrant issue for his commitment.”
Wherefore, your petitioner asks that a writ of habeas corpus may be granted, and that he may be discharged from such unlawful imprisonment.
The writ of habeas corpus was allowed, returnable before me on the 20fch day of December, A. D. 1890. The return of the sheriff to said writ shows that he has the said Jonas Concklin in his custody by virtue of an order of commitment duly issued by the said probate judge in said contempt proceeding, as alleged in the petition.
*80 After a full hearing, and by consent of all the parties, said Concklin was released from the custody of the sheriff, and placed in charge of the attorneys for Concklin until the 30th day of December.
There are several important questions made for decision, some of which are new to the courts of Ohio.
First — The order of the court made in the proceeding in aid of execution shows the court found that the judgment debtor Conklin answered in said proceeding “ that he was the owner of the mining stock which was within his control; that it was not in his possession — never had been; was not within the state of Ohio, but within the state of Colorado.”
From this finding, it is urged that .the property not being Avithin the jurisdiction of the court, a disobedience of an order of the court to deliver it, does not give the court jurisdiction to punish as for contempt.
What the legal status of this finding is, from the final order made in the case, in my judgment it makes no difference in this ¡proceeding, free from any other objection, statutory or constitutional. -If it is considered as an ansAver of the judgment debtor that he has the power to obey the order of the court to deliver the mining stock to the r.eceiAmr, and refuses, he is guilty of contempt.' If it is considered as an answer of the judgment debtor that the title to the mining stock is in dispute, or that it is not absolutely within his power to obey the order of the court, in that case the section of the statute in reference to proceedings in aid of execution cannot give the court or judge jurisdiction to punish as for contempt, for it would be in violation of ai’ticle 1, section 5, of the constitution of the state, which provides that “the right of trial by jury shall be inviolate.”
This, in effect, was held by the Supreme Court in the case of Howell v. Fry, Adm’r, 19 Ohio St. 556, wherein the court say: “In a summary proceeding before the Probate Court on complaint of an administrator against a party suspected of embezzling, concealing or conveying away the property or effects of the estate, the court has no constitutional power to render *81 judgment against the party so charged, except for such property and effects as he on his examination admitted himself guilty of having embezzled, concealed or carried away, and to the extent that the statute professes to authorize a judgment in cases where there is a controversy between the parties, it is unconstitutional.”
The final order made in the case, viz.: “ And it appearing to the court that it is yet in the power of said Jonas Coneklin to comply with the order of this court,” makes the finding, so far as this proceeding is concerned (although it may be- erroneous), an absolute answer of Coneklin that he has the power to deliver the mining stock, and refuses.
Second — Does the statute in proceedings in aid of execution authorize a commitment for contempt for failure to obey the order of the court or judge made in said proceeding?
Section 5472 of the Revised Statutes provides for the examination of a judgment debtor concerning his property where an execution has been returned unsatisfied.
Section 5473 of the Revised Statutes provides for the examination of a judgment debtor concerning his property before an execution has been returned unsatisfied.
Section 5475 of the Revised Statutes provides for the examination of a third person in reference to the property of the judgment debtor in the hands, or under the control, of said person, and binds the property in the possession, or under the control of said person, from the time of the service of an order upon him to appear for said examination.
Section 5483 of the Revised Statutes provides that the judge (upon said examination) may order any property of the judgment debtor, or money due to him, not exempt by law, in the • hands either of himself or other person, or of a corporation, to be applied toward the satisfaction of the judgment, excepting certain exemptions.
Section 5481 of the Revised Statutes provides that if a person, party or witness disobeys an order of the judge, court or referee duly served, he may be punished as for contempt, *82 etc., as provided in the section of the Revised Statutes in reference to contempt proceedings.
Section 5646 of the Revised'Statutes provides “When the contempt consists in the omission to do an act which is yet in the power of the accused to perform, he may be imprisoned until he performs it.”
In the case at bar the judgment debtor, Concldin, was ordered to deliver the mining stock to the receiver. This mining stock was found by the answer of Concldin to be in his hands. Was this such an order as is provided in section 5483 of the Revised Statutes, and for the refusal to obey, the judgment debtor can be subjected to punishment as for contempt?
So far as I am informed, the supreme court of our state has never passed upon the question, although the sections in reference to proceedings in aid of execution have been construed by that court in three different cases.
The first was the case of The Union Bank of Rochester v. The Union Bank of Sandusky, found in 6 Ohio St., page 254. The material facts in that case were, that the Union Bank of Rochester recovered a judgment against The. Sandusky City Bank. The Sandusky, Mansfield & Newark R. R. Co. et al. oaused afijexecution to be issued which was returned unsatisfied, and proceedings in aid of execution were commenced. As thejresult of this proceeding it was found by the court that the UniomBank of Sandusky was indebted to the Sandusky, Mansfield'^Newark R. R. Co., the principal judgment debtor, in a certain sum, and the probate judge ordered the bank to pay the .Union Bank of Rochester its judgment.
Upon this state of facts the supreme court held, in construing section 467 of the Code, (now section 5483 of the Revised .Statutes), as follows :
“ A judge can not under section 467 of the Code enforce the payment of a debt, in the absence of all fraud, by imprisonment as for contempt, but may direct the application of the proceeds of the debt when collected by the receiver or otherwise.”
*83 The effect of this is, leaving the question of fraud out of consideration — that the order of the probate judge should have been not an order to pay the money to the judgment creditor, but an order that this money in the hands of the-bank should be applied when collected to the payment of the judgment.
This order, when made, would hold the money in the hands of the bank for the benefit of the judgment creditor, as provided by section 5475 of the Revised Statutes; but suppose the proper order had been made, and notwithstanding the order the bank had not retained the money, but had paid it over to the judgment debtor — could the bank be punished as for contempt? In my judgment, free from any constitutional question, it could be punished, as the learned judge that delivered the opinion in that case says : “ Perhaps it could be.”
The same learned judge that delivered the opinion in that case again says: “ If section 467 authorized the judge to order payment of a debt or the delivery of property, then section 473 authorizes him to enforce such order by imprisonment. Such, however, is not the proper construction of section 467.”
Under the proper construction given to the section, as I have before stated, an order made under it could be enforced by imprisonment. This language used by Judge Swan in his opinion is no part of the law of the case, and even if it was, it would only extend to the facts of the case as they were before the court, viz.: money or property in the hands of a third person, and not as in the case at bar, property admitted by the judgment debtor to be in his own hands.
The second case was the case of Edgarton & Wilcox v. Hannon, Garretson & Co., 11 Ohio St., page 323, which holds: “The mode of applying property under section 467 of the Code, is not provided, but it must be in,analogy as to claims of the debtor against third persons, to the remedies to which the debtor himself might resort. The court or judge acting under that section is not authorized to settle disputes between the debtor and a third person, or to enforce the collection of a claim by order of payment and attachment; where claims are *84 to be collected, the appointment of a receiver is the proper course.”
This case again decides] me. oly the rights of parties when a certain state of facts exists and the rights of third parties intervene, and not, as in the case at bar, where the only question is between judgment creditor and judgment debtor, with no facts in dispute.
The third case was the case of White v. Gates, 42 Ohio St. 109, the legal effect of which is the same as the other two cases, viz.: Where in proceedings in aid of execution from the examination it appears that the title to the property which is sought to be applied to the satisfaction of the judgment as the judgment debtor’s, is in dispute, a party cannot be imprisoned as for a contempt for refusal to obey an order of the court to so apply the property.
Why — simply because the dispute arising entitles the party under the constitution of the state to a trial by jury.
In my judgment neither one of these cases has any application to the case before us.
The next question presented by the record and urged in argument:
“ Is the section of the statute in reference to proceedings in aid of execution to the extent that the statute professes to authorize a commitment for contempt, where the judgment-debtor, by his own examination, discloses that he has property or money under his control and in his possession, which should be applied to the satisfaction of the judgment, in violation of article 1, section 15, of the Bill of Rights, which reads as follows:
“No person shall be imprisoned for debt in any civil action on mesne or final process, unless in case of fraud.”
At first view, without thought, it would seem that it was a‘violation of this section, for the result to be obtained by enforcing the commitment, would necessarily be a collection of the debt upon which the judgment was founded ; but carefully considering the section as it is, it will be found that all *85 debtors are not within its provisions, it applying to only such debtors as have no means to pay if they would, and excluding from its provisions all debtors that could pay if they would; it affords protection to the honest debtor and leaves the dishonest debtor where the law has always left him — amenable to the law for his acts.
The legislature of our state in its wisdom has wisely provided for the poor and honest man by the homestead and exemption laws; the balance of his property is subjected to his debts, and any act of the judgment debtor that prevents this balance from being so applied, in my judgment, is guilty of a fraud within' the meaning of this section of the Bill of Rights.
Other states have held that the action of a court or judge, similar to the action of the probate judge in the case at bar, under similar constitutions to the constitution of Ohio, was not in violation of the same.
In the case of In re Milburn, 54 Wisconsin, page 24, the Supreme Court of that state held :
“ A judgment debtor who fails to deliver property to a receiver according to an order made in proceedings supplementary to execution, may be punished as for a contempt.”
“ The statute authorizing the imprisonment, as for a contempt, of a judgment debtor who disobeys an order for the payment or delivery of money or property, made in a proceeding supplementary to execution, is not in violation of section 16, article 1, of the constitution.”
The constitution of Wisconsin provides :
<fNo person shall be imprisoned for debt arising out of or founded on a contract express or implied.”
The reason, as given by the court, is: “ The inhibition was against using it to imprison for debt arising out of or founded on a contract expressed or implied. It simply prohibited what had been a remedy in the collection of debts arising out of or founded upon a contract. The remedy which was thus prohibited was well known to have existed in actions *86 at law in contradistinction to. instrumentalities of coercion resorted to in bills and proceedings for relief in chancery. Supplementary proceedings — to enforce a judgment, were in the same action, but nevertheless were in the nature of the old creditor’s bill in chancery.”
In the case of Ex rel. Warfield v. Beclet, 23 Minnesota, page 411, the Supreme Court of that state hold:
“ It is true that the order relates to the debt evidenced by the judgment against the relator, but this in no way alters the fact that the imprisonment is for contempt, not for debt, and the contempt does not consist in the relator’s neglect or refusal to pay the debt, but in the disobedience of the order directing him to hand over certain property to the receiver. The fact that the property in question is to be handed over for the purpose of being applied to the payment of the judgment, is in no way important; the commitment is, nevertheless, in no proper sense, imprisonment for debt.”
In addition to the reason of the court given in the case cited from Wisconsin, that court cited with approval the views given by the Minnesota court.
In the case of the State of Kansas ex rel. v. Burrows, 33 Kansas, page 17, the Supreme Court of that state hold:
“In this case the judge found that the appellant had prop-, erty, which consisted of money, in his possession and under his control, not exempt by law, that should be applied toward the satisfaction of the judgment, and ordered that it be so applied. It was not an order to pay a debt, but was a direction to apply a certain property, discovered upon the examination to be in the possession of the appellant, to the satisfaction of the judgment against him.”
In the case of Ex parte Ree, 12 Iowa, page 213, the Supreme Court of that state say :
“ We are not of the opinion that this chapter (referring to the chapter of proceedings in aid of execution), provides for the imprisonment of the debtor in a matter or under circumstances not fully warranted by the constitution. The failure *87 of the debtor to surrender his property liable to execution to the payment of the judgment, might well be such fraud as that within the meaning of the constitution, he would forfeit' his right to claim exemption from imprisonment.”
The constitution of Iowa is in the exact language of the constitution of Ohio, and reads as follows:
“ No person shall be imprisoned for debt in any civil action on mesne or final process, unless in case of fraud.”
In considering this case another suggestion occurred to my mind : Is the act of the probate court in committing for contempt in violation of article 1, section 15, of the Bill of Rights, which reads: “The right of trial‘by jury shall be inviolate ?”
Bearing in mind that the case at bar is one in which the judgment debtor answered that he. has the mining stock under his control, and which the probate judge found he was able to deliver to the Receiver.
“ This provision of the constitution does not add to the right of trial by jury, but preserves it as it was before the constitution was adopted at common law.” Work v. The State, 2 Ohio St. 296.
“ It has long been settled that while one is to be protected in his interests by the law of the" land, he has a right to the judgment of his peers only in those cases in which it has immemorially existed, or in which it has been expressly given by law.” Adler v. Whitbeck, 44 Ohio St. 569.
• “ Cases of contempt were never triable by jury, and the object of the power would be defeated in many cases if they, were.” Cooley on Constitutional Limitations, page 334.
In the case at bar, a confession of guilt, there would be nothing to submit to a jury. I think the case already cited, found in the 19th Ohio St-., page 559, settles the question, wherein the judge delivering the opinion says :
“If the defendant denied the truth of the charge, he had a constitutional right to a jury trial, and could not be deprived of that right by this summary proceeding, in which no provi *88 sion is made for a jury trial, or for the right of appeal. The statutory provision authorizing a judgment can only be sustained as constitutional and valid in so far as it applies to a case where the defendant does not controvert the truth of the complaint.”
One question remains: Can the question arising upon a proceeding for contempt be made in habeas corpus ?
In the case of Ex parte Swan, 7 Ohio St. 81, it was held: “ Imprisonment mnder a sentence, if clearly unauthorized and void, relief from imprisonment may be obtained by habeas corpus.”
If the probate judge had no jurisdiction to make the order of commitment,’the order is void. He may have acquired jurisdiction to examine the debtor — this would not of itself carry with it a jurisdiction to make the order of commitment.
The jurisdiction to make the order of commitment is acquired under section 5481 of the Revised Statutes already cited, which provides: “If a person, party or witness disobeys an order of the judge duly served, etc., etc.”
It was held in the case of Spies & Son v. Steinruck, 10 Ohio St. 213, as follows:
“When a statute confers upon a court or magistrate the power to issue an order of arrest in a civil case, upon - certain conditions, the statute being in derogation of personal liberty is to be strictly construed, and a creditor availing himself of the remedy must comply with all the conditions imposed by it.” ’
Applying this principle to the case at bar, under section 5481 of the Revised Statutes, before the probate judge would acquire jurisdiction to punish for contempt, the order which was claimed to be disobeyed should be personally served upon the defendant. In other words, he should have his day in court upon the order of the judge, and given an opportunity to defend against it.
It was held in the 63 California Rep., page 578, as follows :
Scofield & Scofield and W. Z. Davis, for applicant.
McNeal & Wolford, contra.
“ Before a party can be brought into contempt for not complying with an order of court, such order must be served upon him.”
Again, it was held in the Supreme Court of New York, 40 Hun. page 38, as follows:
“ In the ■ absence of proof showing a service of the order upon the defendant personally, he could not be adjudged guilty of a coutempt for failing to comply with it.”
In the case at bar, neither the petition in habeas corpus, nor the return of the sheriff, shows that the order was served upon Concklin.
This point is the troublesome question in the case.
The petition, however, does aver “ The court heard the evidence, arguments of counsel, and was fully advised in the premises and made the order against the protest and objection of the said Jonas Concklin.” Is this not equivalent to a service of the order; is it not a waiver of the service, sufficient to give the court jurisdiction ? I am inclined to think that it is.
Entertaining these views, the petition and writ of habeas corpus will be dismissed, and the said Jonas Concklin will be remanded to the custody of Patrick Kelley, as sheriff of Marion county, Ohio. The costs of the proceeding will be taxed to the said Jonas Concklin, for which execution is awarded.